KLEES, Judge.
Plaintiffs herein are the spouse and children of Mrs. Helen LaMark, who suffered severe hypoxic brain damage after she had ceased breathing for an unknown period of time while in the recovery room of Mea-dowcrest Hospital following ordinary gynecological surgery. This action was commenced when plaintiffs filed a petition under the Louisiana Medical Malpractice Act, *869 R.S. 40:1299.41 et. seq., seeking court approval of their settlement with the defendant health care provider, NME Hospitals, Inc. (d/b/a Meadowcrest Hospital), and requesting payment of excess damages from the Patient’s Compensation Fund. The statute limits to $100,000.00 the total liability of a single health care provider for all malpractice claims stemming from the injury or death of any one person (§ 1299.42). It also creates the Patient’s Compensation Fund, financed by surcharges levied on all health care providers, from which are to be paid general damages that exceed the statutory limitation, as well as “future medical care and related benefits,” which the statute does not limit. (§§ 1299.43, 1299.44). The Fund is administered by the Commissioner of Insurance.
In the instant case, the district court approved plaintiffs’ settlement with the hospital for $100,000.00, the maximum liability, on September 5, 1986, reserving the issue of future medical care for further adjudication. Plaintiffs then filed a motion for summary judgment demanding payment of medical expenses incurred since the incident and seeking an order that the Fund pay future medical care and related benefits as and when incurred. Over the Commissioner’s objection, the court granted the motion. After the summary judgment was issued, plaintiffs submitted at different times various motions to compel payment from the Fund of medical expenses incurred since the date of the judgment. Five of these motions were granted on February 20, 1987, with each judgment awarding attorney’s fees on the basis that the Commissioner had unreasonably failed to pay the claims within thirty days of their submission, pursuant to § 1299.43(E)(2). These judgments and the original summary judgment were appealed together and were affirmed by this Court in Lamark v. NME Hospitals, Inc., 522 So.2d 634 (La.App. 4th Cir.1988).
The judgment being appealed herein is the result of a motion plaintiffs filed in April of 1987 seeking payment from the Patient’s Compensation Fund for services rendered by Mrs. LaMark’s husband in connection with her rehabilitation, for the remodeling of the LaMark home to accomo-date Mrs. LaMark in her present condition, and for a specially designed van in which to transport Mrs. LaMark. The Commissioner opposed the motion, and on June 12, 1987, the trial judge heard testimony on a rule to show cause why the Commissioner should not be ordered to authorize payment of these expenses. At the conclusion of the hearing, the trial judge denied the claim for the services performed by Mr. LaMark, but ordered the Commissioner to pay from the Fund one-half the base value of a specially modified van ($8,654.00), and either to pay the cost of remodeling the Lamark family home ($81,500.00) or to take title to the family home and pay for the construction of a new home equal to the present one in size and suitable for a wheelchair bound person. In addition, the judgment awarded plaintiffs costs and $2,000.00 in attorney’s fees.
On behalf of the Fund, the Commissioner now appeals that judgment. He contends that the judgment is in error because: (1) The renovation of the LaMark home and the modified van do not constitute “future medical care and related benefits” as contemplated in § 1299.43(B); and (2) The award of attorney’s fees was improper because the Commissioner’s failure to pay these expenses within thirty days was not “unreasonable” under § 1299.43(E)(2). After reviewing the record, we affirm the trial court’s judgment.

Future Medical Care and Related Benefits

R.S. 40:1299.43(B)(1) defines “future medical care and related benefits” as “all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services [including] drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services.” Furthermore, § 1299.43(B)(2) states that “[f]uture medical care and related benefits ... shall not be construed to mean non-essential speciality items or devices of convenience.”
The Commissioner’s first argument with regard to this section is that the judgment *870 awarding future medical care and related benefits is premature because there has been no trial to determine the maximum extent of such benefits in this case. This argument was rejected by us in LaMark v. NME Hospitals, Inc., supra, when this Court affirmed the initial summary judgment. We therefore consider only the Commissioner’s alternative argument that the home renovation and the van are not “reasonably necessary” to the care and rehabilitation of Mrs. LaMark.
The trial court’s determination that the home renovation and specially equipped van are necessary to Mrs. Lamark’s rehabilitation is a factual conclusion which we cannot overturn in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). Considering the evidence before the court, we find no manifest error in this decision.
Doctor Eugene Alcazaran, who has been Mrs. LaMark’s treating physician since the patient was admitted to F. Edward Hebert Hospital in November of 1985, testified that a team of doctors, nurses and therapists who cared for Mrs. LaMark at the hospital concurred in his decision to discharge her in February of 1986 because they thought she would achieve maximized rehabilitation at home. In connection with her discharge, a home evaluation study was ordered to determine whether the La-Mark home was accessible to the patient and appropriate for her disability. Based on this study, Dr. Alcazaran recommended the installation of wheelchair ramps at the entrances to the home, the widening of all doorways, the modification of the downstairs bathroom, and the addition of an elevator to make the second floor accessible and a covered carport to make it possible to transfer the patient to a vehicle during inclement weather. Doctor Alcazar-an also recommended that the patient’s family be provided a van equipped with a wheelchair lift and chair-anchoring mechanism. Although he conceded that he did not expect significant improvement in Mrs. LaMark’s neurological functional ability, he testified that the goal of the rehabilitation effort was to reintegrate her into her home and community.
Other witnesses for the plaintiffs included Mrs. LaMark’s husband, who testified concerning the extreme difficulty he had in moving his wife about the house and the fact that she had indicated at times, even in her limited capacity, that she would like to go to another room of the house or to go outside. Finally, an architect and contractor testified for the plaintiffs concerning the cost of renovating versus the cost of building a new home.
The sole witness for the Commissioner was Dr. Laxman Kewalramani, an expert in physical and rehabilitative medicine. Dr. Kewalramani had not examined Mrs. La-Mark; nor had he ever met with her family or any of her nurses or therapists. His testimony was completely based upon his viewing of a videotape introduced by plaintiffs and his review of Dr. Alcazaran’s deposition and the notes of Mrs. LaMark’s nurses, physical therapists and occupational therapists from September of 1986 through December of 1987. Although he conceded that Dr. Alcazaran’s treatment was not below standard, Dr. Kewalramani thought that Mrs. LaMark would be better off in an extended care facility where she could receive more intensive therapy, at least for the interim. In the alternative, he testified that, should the patient remain at home, it would not be necessary to make the upstairs area of the house accessible to her, but only the first floor. Finally, he agreed that the patient needed a van in which she could be transported.
There is no jurisprudence interpreting the term “reasonably necessary” in § 1299.43. However, the language of the statute does not require the court to choose the best medical treatment for the patient or to select the most cost-efficient treatment. Rather, the intent of the statute is to distinguish between those items which are reasonably necessary to the patient’s treatment and those which are devices of convenience. Where, as here, the treating physician has testified that certain items are reasonably necessary to continue the patient’s rehabilitation program, we are not *871 inclined to go against that opinion merely because another doctor feels that another method of treatment would be preferable. Dr. Alcazaran’s testimony convinced us, as it did the trial judge, that the home renovation and the van are reasonably necessary to Mrs. LaMark’s care. The fact that these items would not be required if another method of treatment were employed, as suggested by Dr. Kewalramani, is not relevant under the statute. Therefore, we will not overturn the trial court’s judgment.

Attorney’s Fees

The trial court awarded attorney’s fees to plaintiffs pursuant to § 1299.43(E)(2), which states: "The court shall award reasonable attorney’s fees to the claimant’s attorney if the court finds that the patient’s compensation fund unreasonably fails to pay for medical care within thirty days after submission of a claim for payment of such benefits.” The Commissioner admits that the claim was not paid within thirty days, but argues that there was no showing made by plaintiffs that the failure to pay was unreasonable. We rejected this argument in LaMark v. NME Hospitals, Inc., supra, at 640, wherein we noted that the statute does not place the burden of proving the unreasonableness on the clai-miant. In this case, the trial judge heard the Commissioner’s explanation for his tardiness and apparently made the determination that the Commissioner’s failure to pay the claims within thirty days was unreasonable. As we stated in our prior opinion, we find no manifest error in that decision and therefore decline to overturn the trial court’s award of attorney’s fees.
CONCLUSION:
Accordingly, for the reasons herein stated, the judgment of the trial court is affirmed in all respects.
AFFIRMED.